LOUIS K. WILKINS AND CHARLES W. WILKINS, TRADING AS WILKINS BROTHERS, PLAINTIFFS IN ERROR, v. STANDARD OIL COMPANY, DEFENDANT IN ERROR.

CHARLES W. WILKINS, PLAINTIFF IN ERROR, v. STANDARD OIL COMPANY, DEFENDANT IN ERROR.

Argued June 18, 1909—Decided January 7, 1910.

The rule of law which determines whether binding instructions to the jury are proper is that if the testimony presents disputed material facts or, if reasonable, divergent inferences may be drawn by fair-minded men from material facts which are not in dispute, then it is for the jury, not for the court, to settle the conflict and draw the inference.

On error to the Supreme Court.

For the plaintiffs in error, *David O. Watkins* and *John W. Wescott.*

For the defendant in error, *Thomas E. French, Joseph J. Summerill. Abraham M. Beitler* (of the Philadelphia bar), of counsel.

The opinion of the court was delivered by

VOORHEES, J. These writs of error bring up from the Supreme Court two judgments entered by direction of the trial court in favor of the defendant. One of the suits was brought

by Louis K. Wilkins and Charles W. Wilkins, partners, who kept a general store at Thorofare, in Gloucester county, for damage to their building and stock by reason of an explosion which wrecked the building and its contents. The other suit was brought by Charles W. Wilkins for personal injuries sustained by him by reason of the same explosion.

The theory of the suit as evinced by the language of the declaration is that "the defendant negligently placed in a tank" for the storage of kerosene "in the cellar" of said building "a large quantity of gasoline or other liquid compound of or other combustible matter of crude petroleum of a volatile, dangerous and explosive nature and which was likely to generate throughout said store a highly dangerous and explosive gas," all which was known to the defendant.

The plaintiffs were accustomed to purchase, from time to time for their uses, kerosene from the defendant, which was placed in the cellar tank, and also gasoline which was kept in another building some seventy feet from the store structure. In general terms the allegation is that on the morning of the explosion the defendant negligently delivered and placed in the kerosene tank in the cellar gasoline or other dangerous substance instead of kerosene; that in the afternoon the vapors from the same had permeated the store above in sufficient quantities to form an explosive mixture with the air, and that upon attempting to light a lamp in the store that afternoon the explosion followed.

The sole question to be determined is whether the verdict was properly directed in favor of the defendant. The rule of law which determines whether binding instructions to the jury are proper is that if the testimony presents disputed material facts, or if reasonable, divergent inferences may be drawn by fair-minded men from material facts which are not in dispute, then it is for the jury, not for the court, to settle the conflict and to draw the inference. A long line of cases in this court has settled this principle. *Nolan* v. *Bridgeton,* 45 *Vroom* 559; *Vandegrift Construction Co.* v. *Camden, Id.* 669; *Hayward* v. *North Jersey Street Railway Co., Id.* 678; *Weston* v. *Pennsylvania Railroad Co., Id.* 484; *McCarthy* v.

*Metropolitan Life Insurance Co.*, 46 *Id.* 887; *Bower* v. *Bower, ante p.* 387.

In the case last cited Mr. Justice Garrison thus clearly states the rule:

"A judgment entered upon a directed verdict will be reversed on error if by such direction any material matter in issue concerning which there was a substantial conflict in the testimony was resolved by the trial court adversely to the plaintiff in error.

"To constitute such a conflict it is not necessary that the facts themselves be in dispute, for if the inference to be drawn from undisputed facts is one about which there may reasonably be an honest difference it is for the jury not the court to draw such inference."

Applying these principles to the case under review, it cannot be doubted that the jury upon the testimony might have found that the explosion was caused by gasoline or other combustible product of crude petroleum, as stated in the declaration and as above quoted.

It was urged that there was a possible inference arising from the testimony that the accident was due to the explosion of gunpowder, for which the defendant would not have been responsible, and that therefore the jury should be justified by the evidence in excluding this as the cause. *Stumpf* v. *Delaware, Lackawanna and Western Railroad Co.*, 47 *Vroom* 153. Aside from the fact that the testimony showed that the quantity of powder stored was not sufficient to produce the great damage which ensued, and also from the fact that there was testimony that the powder cans were covered, there was also evidence that the direction of the explosion was upward from the cellar, from which, and from other evidence, the jury might reasonably have excluded the idea that a powder explosion had caused the damage. *Suburban Electric Co.* v. *Nugent*, 29 *Id.* 658.

The question whether the defendant was responsible for the substance placed in the oil tank on the morning of the accident or not, was likewise a question for the jury. The

fact that the tank was filled by the defendant is undisputed. The testimony of the employes is that water-white oil, not gasoline, was placed in the tank wagon by which it was transported to the plaintiffs' store and carried through the store in buckets and thence poured into the tank by the defendant's employes. It is likewise in evidence that on the morning of the delivery before starting from the defendant's station there were some forty gallons of gasoline in the tank wagon, which had a capacity of six hundred and thirty-five gallons; that fifteen of these were sold and the remaining twenty-five gallons were removed from the tank wagon which was thereafter filled with oil, part of which was delivered to the plaintiffs. Thereafter the remainder was sold to various customers and that no complaints were heard from them. There was proof, however, that one of the men who filled the tank wagon had said after the first trial of this cause: "I am worried, I don't know what was in that wagon," and that the driver of the wagon had stated to a customer that the wagon contained gasoline, testimony, while not evidential of these facts, yet such as would weaken the force of the evidence given by these witnesses as to their care in removing the gasoline from the tank wagon and in filling it with oil. Twenty-five gallons of gasoline in six hundred and thirty-five gallons would amount to about four per cent. of the whole, a percentage of gasoline which the proofs showed would render the mixture dangerous. It was also shown at the trial that gasoline might be burned in an ordinary lamp so that such use might not have been productive of any serious result, although some of the substance sold from the tank before the explosion is said to have caused lamp chimneys to break and some of it burned with a peculiar flame said to be indicative of the presence of gasoline. The subsequent use two or three months after the accident of the substance which was left in the tank without bad results was urged as evidence that it was kerosene, but there was likewise testimony that gasoline was lighter than kerosene and would evaporate, from which it might be inferred that at the time when the remaining substance was sold the gasoline had been dissipated by exposure to the air, kerosene only remain-

ing. It was likewise urged that its use by a customer in kindling fires without any result different from that obtained by the use of kerosene was proof that the substance placed in the tank was not gasoline, but testimony was offered that a small quantity of gasoline such as would be made use of in this manner would not appreciably differ from the burning of kerosene if burned in the open.

A former trial of these cases was under review by the Supreme Court on rule to show cause. 45 *Vroom* 151. It was there suggested that perhaps the gasoline vapor came from the kerosene lamp which might by mistake have been filled with gasoline. The evidence in the present case, however, is that that lamp had been filled from the tank after the defendant had made the delivery from its wagon.

It appears that the defendant took a sample of the liquid after the explosion. On the first trial this fact was not stated, and it was supposed that no sample had been taken by either party. The proof was that the defendant having found no gasoline in the sample after making certain tests by feeling it, smelling it and by applying the flash test, had thrown away the rest of the sample, and offered as an excuse for not introducing these facts at the first trial that the defendant relied upon its record.

From a careful examination of all the material testimony, disputed and undisputed, favorable to the plaintiff, it cannot be said that there are no inferences arising therefrom about which fair-minded men would not differ, and therefore it was error in the court to control the verdict.

The judgment will be reversed and a *venire de novo* awarded in each case.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, JJ. 16.